## Twining Estate

*Lee B. Lansberry*, for register of wills.
*William M. Power*, for administratrix.

BIESTER, P. J., January 3, 1958.—John E. Twining died on January 5, 1956, intestate, a resident of this county, leaving to survive him as his heirs at law three sisters, one half brother, one half sister, and three children of a deceased brother.

On January 10, 1956, Huldah T. Park, a niece of decedent, appeared before the Register of Wills of

Bucks County and applied for letters of administration. The application for such letters set forth that the estimated value of decedents personal property was $50,000. Relying upon this estimated figure, the register of wills directed the administratrix to file a bond in the amount of $100,000, that is to say, in double the amount of the estimated personal property. Following the filing of the bond, letters of administration were granted to the said Huldah T. Park.

On April 5, 1957, the administratrix filed an inventory which fixed the amount of the personal estate at $771,297.75 and real property in the amount of $44,-550.

On April 9, 1957, the administratrix was notified by the register that an additional bond would be required, based upon the inventory value of the personal estate. The administratrix refused to post such additional security. On May 7, 1957, the register of wills filed his petition with this court to show cause why the administratrix's bond should not be increased, to which petition the administratrix filed her answer.

The practice governing the filing of bonds by a fiduciary and the authority of the court permitting it to require additional security is set forth in the Fiduciaries Act of 1949. Section 321, 20 PS §320.321 of the Fiduciaries Act contains the authority of the register as to the requirement of security as a prerequisite to the grant of letters. That section provides as follows:

"Except as hereinafter provided, before letters shall be granted to any personal representative, he shall execute and file a bond which shall be in the name of the Commonwealth, with sufficient surety, in such amount as the register considers necessary, having regard to the value of the personal estate which will come into the control of the personal representative. . . ."

Section 324 of the act, 20 PS §320.324, permits the court upon cause shown and after such notice, if any, as it shall direct to require a surety bond, or increase or decrease the amount of the bond or to require more or less security therefor,

As is well known, it is the custom of the registers of wills in many counties, if not all, in Pennsylvania, to rely upon the estimate of the estate of decedent contained in the petition for the grant of letters. Normally the bond is fixed at twice this amount of the estimated value of the estate.

There is no law which requires the register to accept the estimate for the purpose of fixing the bond, but it would be unreasonable to expect the register to make an independent investigation of the value of the estate before granting letters. For all practicable purposes therefore, he is relegated to the averments contained in the petition for letters in fixing the amount of the bond.

The estimate made by the fiduciary is usually, to say the least, conservative and at times, as here, completely unrealistic. In the instant case the inventory revealed that decedent owned, at the time of his death, stocks and bonds having a value of over $660,000 and checking accounts, savings accounts and cash in excess of $90,000. It may be in this case, as in many others, that counsel was motivated by a desire to save the estate the expense of a large bond premium, or it may be that neither the fiduciary nor his attorney had made any inquiry whatever regarding the size of the estate before seeking letters.

The frequent result of underestimating the value of an estate is that the creditors and distributees are without adequate protection against a wrong-doing or improvident fiduciary. It appears to us that attorneys have not only an obligation to the register of wills as

an officer of the court, but also the creditors, beneficiaries and the fiduciaries themselves, to see that the interested parties are properly protected, and that they should make at least a cursory investigation to determine the approximate value of the estate that will come into the hands of the fiduciary.

In the Stuckert Estate, 82 D. & C. 363, the then President Judge Holland of the Orphans' Court of Montgomery County so well expresses our own view on the general subject that we can do no better than quote from his opinion in which he says (page 366) :

". . . However, since there appears to be sporadic instances of discontent in regard to bonds of personal representatives, especially administrators, some discussion of the situation that might be helpful to registers of wills might not be inappropriate. Needless to say, this discontent arises from the expense of bond premiums, which add to the administration expenses.

"Section 321 of the Act is the successor to former statutes in substantially the same terms, and the practices under it and its predecessors have been the same for years, if not centuries.

"Requiring the bond in double the amount of the probable personalty is one of those practices. It is still a reasonable rule of convenience as, at best, it is an uncertain estimate and, as pointed out above, no one, including the applicant for letters, can know accurately what the extent of the assets is at that time. Nevertheless, the discretion is that of the register as to the amount. It can be argued, as in this case, that the administrators, being the only persons interested, should have the privilege of waiving any surety. This sounds like a convincing argument until it is suddenly realized that it puts the register in a position requiring him to adjudge in every case the identity of the interested parties and the extent of their interests. Wills

have varying degrees of complications, so that in cases of administration c. t. a. the register may find himself in a maze of doubt and in a controversial position. The same would be true in cases of intestacy where many heirs in different degrees of relationship to the decedent are indicated. This burden should not rest on the register. Rules of procedure must be uniform as to all cases, the obvious ones along with those with complications.

"In many cases it could be argued that no surety at all is necessary, and in those cases it might be patently the fact. When the number of defalcations are counted both as to number and also dollar wise, and then compared with the number of cases involving millions of dollars that are honestly administered, a convincing argument could be advanced that no surety should be required in any case. But the legislature has provided otherwise and the application of the law must be uniform as to every case or hopeless confusion will be the result.

"This problem of surety bond premiums is akin to the problems as to fiduciaries' compensation and lawyers' fees and equally difficult of exact solution. The application of uniformity squeezes out incidents that have the appearance of inequity. But uniformity we must have, or chaos. As the situation now stands surety bond premiums must be regarded as one of the expenses of administration, the same as court costs, fiduciaries' commissions and lawyers' fees, and will have to be tolerated until the Legislature finds some other better method of security. In the application of all the above mentioned rules, it is reasonable to suppose, the register will use an admixture of common sense, for which there is no substitute."

Counsel for the fiduciary argues that the beneficiaries and creditors are not themselves seeking any increase in the amount of the bond and that they are

amply protected by the fact that the assets of the estate are under the joint control of the bonding company, and that, under those circumstances, the register is not a proper party to make the present application.

The register of wills is not required, nor should he be, to determine the risk of defalcation in any particular estate. Surely, had the fiduciary in making application for letters of administration estimated the estate near its actual value, the fact that the customary joint control by the bonding company was required, would not, per se, justify a reduction of the bond.

As to the interest of the register of wills, we must agree that under the Fiduciaries Act of June 7, 1917, P. L. 447, the practice outlined to obtain an increase in the bond was by exception made to the bond by a party in interest, and where such exceptions were filed, the register was authorized, in proper cases, to require the giving of security in a larger amount than that set forth in the bond originally filed. In the event the fiduciary failed to comply with such an order, the register might revoke the letters.

Under the Fiduciaries Act of April 18, 1949, P. L. 512, the matter of changing the amount of the surety bond is given to the court by section 324 upon cause shown, and there is no requirement that the cause be shown by a party in interest.

It therefore appears to us that whether or not the register of wills is a party in interest need not be decided here, as that provision of the Fiduciaries Act of 1917 has been deleted.

In point of fact it seems to us that it is impractical to demand additional security only in those cases in which a beneficiary or creditor raises the question of the sufficiency of the bond. In many instances the interested parties have no information regarding the amount of the bond filed and in many cases are not ad-

vised of the filing of the inventory. The register, on the other hand, is possessed of this information and, in effect, is acting on behalf of the parties in interest.

In addition to the original bond filed, the administratrix has filed additional bonds totalling $51,500 covering the proceeds of the sale of the estate's real estate.

Under the circumstances we believe that cause has been shown justifying an increase in the bond and make the following

### Order

And now, to wit, January 3, 1958, the court orders and directs that Huldah T. Park, administratrix of the Estate of John E. Twining, deceased, execute and file with the Register of Wills of Bucks County an additional bond in the usual form with sufficient surety in the amount of $650,000.